# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 17-30684-BPC
                                                    Chapter 13

ROBERT LASLIE JONES, III,
        Debtor.
_____

WHEELER BROS., INC,
        Plaintiff,
v.                                                 Adv. Proc. 17-03128-BPC

ROBERT LASLIE JONES, III,
        Defendant.
_____

In re                                              Case No. 17-31726-BPC
LAVENIA A. JONES,                               Chapter 13
        Debtor.
_____

WHEELER BROS., INC,
        Plaintiff,
v.                                                 Adv. Proc. 17-03129-BPC

LAVENIA A. JONES,
        Defendant.

## MEMORANDUM OPINION

On November 10, 2017, Wheeler Bros., Inc. ("Wheeler") filed adversary proceedings against Robert Laslie Jones, III ("Laslie") (AP-17-03128) and Lavenia Ann Jones (hereinafter "Ann", and collectively with Laslie, "Defendants") (AP-17-31726). Wheeler's Complaints object to the discharge of each Defendant and to the dischargeability of debts owed to Wheeler by Defendants pursuant to §§ 523(a)(2)(A); 523(a)(6); 727(a)(3); and

1

727(a)(5) of the Bankruptcy Code. The debts owed to Wheeler by Defendants arise from a judgment and contempt orders entered in a case filed by Wheeler against Defendants and other defendants in the United States District Court of the Middle District of Alabama, Case 2:14-cv-01258 (the "District Court Litigation").[1] The District Court found that Defendants and others "willfully, maliciously, and intentionally" defrauded Wheeler and entered judgment (the "District Court Judgment") in favor of Wheeler in accordance with those findings on May 15, 2017. (Plaintiff's Exhibit A-13). Prior to that District Court Judgment, the District Court entered two Sanctions Orders against Defendants and other defendants for various discovery issues, including an award to Wheeler for attorneys' fees and costs.

Before this Court now are Motions for Summary Judgment (the "Motions") filed by Wheeler in these adversary proceedings. Although Wheeler initiated the proceedings with multi-count Complaints, Wheeler limits its request for relief in the Motions to § 523(a)(2)(A) of the Bankruptcy Code. Specifically, the issues before the Court are whether the debts owed as a result of the District Court Judgment and the debts owed as a result of the Sanctions Orders should be excepted from discharge under § 523(a)(2)(A) as a matter of law through the application of collateral estoppel. The Court holds that the doctrine of collateral estoppel applies as to the District Court Judgment and the Motions are due to be granted in part and denied in part. The debts owed by Defendants to Wheeler as a result of the District Court Judgment are excepted from discharge. However, the Court holds that the doctrine of collateral estoppel does not apply to the Sanctions Orders, and there remains a genuine issue

---

[1] The other defendants in that case were: Robert L. Jones, Jr.; Virginia Jones; Advanced Fleet Services, LLC; Jonathan Caton Jones; Pirates Tow, LLC; Robert L. Jones, Sr.; A&B Developments, LLC; A&B Properties, LLC; Best Buy Automotive, LLC; Jones Brothers Enterprises, LLC; and Kyle Breece Jones.

2

of fact for trial as to the dischargeability of the debts owed by Defendants to Wheeler pursuant to the Sanctions Orders under § 523(a)(2)(A).

## I.     JURISDICTION

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(I) and (J). This is a final order.

## II.    FACTS

### A.     District Court Litigation

The dispute between these parties has been ongoing for years. In 2014, Wheeler brought an action consisting of 45-counts against Defendants and other Jones family members and related business entities in the District Court. The complaint set forth grounds for diversity jurisdiction and alleged both state fraudulent transfer claims under the Alabama Uniform Fraudulent Transfer Act ("AUFTA") and veil-piercing claims as to Defendants.

Prior to trial, several discovery hurdles (including, but not limited to: improper conduct and the withholding or destruction of documents) resulted in Wheeler being awarded sanctions against all the defendants after a two-day hearing. The Sanctions Orders (i) barred Defendants (and other defendants not a party to these proceedings) from introducing any evidence at trial of any consideration or reason given for any transfers directly or indirectly received by any of them from Robert L. Jones, Jr. or Advanced Fleet Services, LLC; (ii) provided an adverse jury instruction for destruction or spoliation of evidence by Laslie (and other defendants not a party to this proceeding); and (iii) required Defendants (and other defendants not a party to this proceeding) to pay Wheeler's costs, including attorneys' fees,

3

costs, and expenses, which were expended by Wheeler in the total amount of $58,074.31. (Plaintiff's Exhibits A-9, A-10).

On March 8, 2017, days before trial in the District Court Litigation was scheduled to begin, Laslie filed a chapter 13 bankruptcy petition with this Court. Wheeler filed an Emergency Motion for Relief from Stay in the bankruptcy case, which was granted on a limited basis in order to allow the District Court Litigation to proceed.

A bench trial took place on March 13, 2017. Anthony Bush, counsel of record for Defendants throughout the District Court Litigation, appeared at the trial. At that time, Mr. Bush requested to withdraw as counsel. Specifically, Mr. Bush stated on record:

> Your Honor, these defendants have asked that I stand down and not defend this case. . . .
>
> And to the extent I would have the authority to represent these defendants anyway, in light of the bankruptcies and in light of the fact that I haven't been employed by the bankruptcy estates, they've asked that Bailey Jackson and I not defend. They've asked that we not appear. Of course, Your Honor ordered that we do so and we're certainly going to be here for Your Honor.
>
> I understand that none of these defendants will be appearing. I understand that none of these defendants will be defending the case. . . .
>
> Bailey and I have had each of our clients sign written statements acknowledging that their failure to defend may very well result in default. They've understood that. They acknowledged they understand that.

(Plaintiff's Exhibit A-11, pages 6-7). The Honorable Paul G. Byron denied Mr. Bush's request to withdraw and simultaneously clarified that trial would proceed as scheduled in lieu of default judgment. Specifically, Judge Byron expressed concerns about default being improper based on the defendants' prior defenses and involvement throughout the case. *Id.* at 7-8 ("default typically requires no defense by the party against whom the default is being entered. So in this case, there's been defense for quite a period of time. . . . And entering a

4

default would seem to me to be unjust in light of the prior defense."). Accordingly, Defendants were permitted to present evidence (subject to the terms of the Sanctions Orders), lodge objections, question witnesses, and present a defense during trial through their counsel.

In a detailed Memorandum of Decision (the "Decision") that entered May 15, 2017, the District Court combed through each count of the Complaint; identified transferor, transferee, and amounts transferred; and made its findings in favor of Wheeler. The transfers by and/or to Defendants (or business entities on their behalf) were extensive. Particularly relevant to these proceedings, for all of the counts regarding actual fraud pursuant to § 8-9A-4(a) of the AUFTA, the District Court found:

> Wheeler has met its burden of proving that the transfers alleged in . . . the Complaint are fraudulent transfers of assets . . . pursuant to Ala Code § 8-9A-4(b). . . . These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

(Plaintiff's Exhibit A-12).[2]

Specifically, the following paragraphs of the Decision attribute actual fraud to Ann, in her individual capacity or as the alter ego of entities controlled by Ann: 107-109; 112-115; 117; 123; 128; and 132-140. The District Court avoided transfers to and from Ann finding that the "transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee", with the "willful, malicious, and actual intent to injure, delay, or defraud Wheeler." (Plaintiff's Exhibit A-12). Similarly, the following paragraphs of the Decision attributed actual fraud to Laslie, in his

---

[2] Similar paragraphs in this section are based on violations of the same AUFTA section, §8-9A-4, but the specifics regarding the count, transferor, exhibit number and corresponding amounts obviously differ and were excluded from this exemplary paragraph.

individual capacity and as the alter ego of entities controlled by Laslie: 110; 112; 119; 121-125; 129; 134; 137; and 140. The District Court avoided transfers to and from Laslie finding that the "transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee", with the "willful, malicious, and actual intent to injure, delay, or defraud Wheeler." (Plaintiff's Exhibit A-12).

In the accompanying Final Judgment entered the same day, the District Court stated:

> 2. Judgment is entered in favor of Plaintiff, WHEELER BROS., INC., and against Defendants, ROBERT L. JONES, JR., VIRGINIA JONES, ADVANCED FLEET SERVICES, LLC, ROBERT L. JONES, III, PIRATES TOW, LLC, LAVENIA A. JONES, ROBERT L. JONES, SR., A&B DEVELOPMENTS, LLC, A&B PROPERTIES, LLC, BEST BUY AUTOMOTIVE & TIRES, LLC, JONES BROTHERS ENTERPRISES, LLC, and KYLE BREECE JONES, on Counts I through XIX, XXI through XXV, XXVII through XXXI, XXXIII through XXXIX, and XLI through XLV of the Complaint.
>
> . . .
>
> 4. Defendant, A&B DEVELOPMENTS, LLC, is the mere alter ego of Defendants, ROBERT L. JONES, SR. and LAVENIA A. JONES.
>
> . . .
>
> 6. Defendant, BEST BUY AUTOMOTIVE & TIRES, LLC, is the mere alter ego of Defendants, ROBERT L. JONES, SR. and LAVENIA A. JONES.
>
> 7. Defendant, JONES BROTHERS ENTERPRISES, LLC, is the mere alter ego of Defendant, ROBERT L. JONES, III.
>
> 8. The fraudulent transfers identified and described in the Court's May 15, 2017 Memorandum of Decision are declared null and void.
>
> . . .
>
> 10. Of the Total Sum, Plaintiff, WHEELER BROS., INC., shall recover jointly and severally from Defendant, LAVENIA A. JONES, One Million One Hundred Thirty-Six Thousand One Hundred Eighty-Two and 51/100 Dollars

($1,136,182.51), which shall bear interest at the legal rate as provided by law, for which sum let execution issue.

. . .

12. Of the Total Sum, Plaintiff, WHEELER BROS., INC., shall recover jointly and severally from Defendant, ROBERT L. JONES, III, Seven Hundred Three Thousand Forty-Six and 75/100 Dollars ($703,046.75), which shall bear interest at the legal rate as provided by law, for which sum let execution issue.

(Plaintiff's Exhibit A-13).

Ann filed a chapter 13 bankruptcy petition in this Court on June 19, 2017.

### B.    Bankruptcy Court Litigation

Wheeler filed two separate adversary proceedings against Defendants on November 10, 2017. The Complaints seek a judgment from this under §§ 523(a)(2)(A); 523(a)(6); 727(a)(3); and 727(a)(5) of the Bankruptcy Code. Defendants, through their individual attorneys, filed separate Answers in the respective adversary proceedings.

Wheeler filed a Motion for Summary Judgment and accompanying brief in each case on April 14, 2019. Like the Complaints, the Motions share factual and legal bases. However, Wheeler limits its nondischargeability arguments in the Motions to § 523(a)(2)(A). Defendants separately filed briefs in response to the Motions, and a joint hearing on the Motions was held June 5, 2019.[3]

### III.    LEGAL ANALYSIS AND CONCLUSIONS OF LAW

---

[3] In support of their motions/responses, the parties each provided copies of the District Court's Sanctions Orders, Trial Transcript, Decision, and District Court Judgment. There were no objections to these submissions by any party. For uniformity, the Court cites to Plaintiff's exhibits only even though the same items were also provided by Defendants.

7

Relying on the doctrine of collateral estoppel and the Supreme Court's holding in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016), Wheeler argues that Defendants are not permitted to relitigate the issue of Defendants' actual fraud under § 523(a)(2)(A) because it has already been established in the District Court Litigation that Defendants willfully, intentionally, and maliciously participated in a fraudulent transfer scheme to commit actual fraud against Wheeler. As such, Wheeler contends that there is no genuine dispute as to any material fact such that it is entitled to judgment as a matter of law under § 523(a)(2)(A). Additionally, Wheeler argues that the attorneys' fees awarded to Wheeler as sanctions in the District Court Litigation are likewise nondischargeable as a matter of law pursuant to collateral estoppel.

Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to these bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, states that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. The movant bears the initial burden to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Id.* The dispute referred to in Rule 56(c) must be significant because "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10, 91 L. Ed. 2d 202 (1986) (emphasis added). At the summary judgment stage, the judge does not weigh the evidence and determine the truth of the matter, but instead determines only whether there is a genuine issue for trial. *See id.* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249; *see also First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287, 88 S. Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 258.

The creditor bears the burden to establish by a preponderance of the evidence that the debt at issue meets an exception to discharge under § 523. *Grogan v. Garner*, 498 U.S. 279, 286-88, 111 S.Ct. 654 (1991). Section 523(a)(2)(A) excepts certain debts from discharge if the debt was "obtained by" "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523. "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d 655 (2016). A defendant is found to have the requisite fraudulent intent pursuant to § 523(a)(2)(A) if he "actively and knowingly participates in a fraudulent scheme" or "knowingly participates in and orchestrates a fraudulent scheme." *In re Ettus*, 596 B.R. 405, 411 (Bankr. S.D. Fla. 2018).

9

**A. The Doctrine of Collateral Estoppel Applies to the Judgment Debts and Summary Judgment Is Warranted as to the Judgment Debts.**

The doctrine of collateral estoppel serves to prevent the relitigation of issues already adjudicated by a valid and final judgment of another court. A prior fraud judgment, if the elements coincide with the discharge exception, can have collateral estoppel effect in dischargeability proceedings in bankruptcy court. *See Grogan v. Garner*, 498 U.S. at 286; *In re St. Laurent*, 991 F.2d 672, 675-66 (11th Cir. 1993), *as corrected on reh'g* (June 22, 1993) ("While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in [another] court, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability."). When a party seeks to invoke collateral estoppel regarding dischargeability of a debt in bankruptcy, it must also establish that the burden of persuasion in the discharge proceeding is not significantly heavier than the burden of persuasion in the initial action. *In re Bush*, 62 F.3d at 1322. Neither party here has suggested that the burden of persuasion in this dischargeability proceeding is any heavier than the burden in the District Court Litigation.[4]

---

[4] The standard of proof applied in all nondischargeability proceedings under § 523(a) is the "ordinary preponderance of the evidence standard." *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Similarly, a plaintiff "bears the burden of proving the elements of its state law fraudulent transfer claim by a preponderance of the evidence." *In re Earle*, 307 B.R. 276, 288 (Bankr. S.D. Ala. 2002) (citing *In re Tri–Star Technologies Company,* 260 B.R. 319, 324 (Bankr. D. Mass. 2001); *In re Lawler,* 141 B.R. 425, 428–29 (9th Cir. BAP 1992)); *see also In re Vista Bella, Inc.*, No. 11-00149-MAM-7, 2013 WL 2422703, at *10 (Bankr. S.D. Ala. June 4, 2013), *on reconsideration,* No. 11-00149-MAM-7, 2013 WL 3306106 (Bankr. S.D. Ala. June 28, 2013) ("Under either § 548 or § 544(b), the party alleging a fraudulent conveyance bears the burden of proof by a preponderance of the evidence."). Thus, the evidentiary burdens for this nondischargeability action is not significantly heavier than any required under the AUFTA.

Both Defendants and Wheeler contend that this Court should look to the federal principles in these proceedings. The Court assumes their contentions are based on their understanding that when the prior judgment was rendered by a federal court, the bankruptcy court looks to federal principles of collateral estoppel. However, if the federal court's jurisdiction was based on diversity jurisdiction, as the District Court's jurisdiction was here, courts must look instead to the applicable state's rules of collateral estoppel. *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) ("We hold that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction."). Accordingly, this Court is to look to Alabama law for the elements of collateral estoppel. Under Alabama law, a movant seeking to employ the doctrine of collateral estoppel must satisfy the following elements:

> (1) The issue must be identical to the one involved in the previous suit;
> (2) the issue must have been actually litigated in the prior action; and
> (3) the resolution of the issue must have been necessary to the prior judgment.

*Martin v. Reed*, 480 So. 2d 1180, 1182 (Ala. 1985); *Conley v. Beaver*, 437 So. 2d 1267, 1269 (Ala. 1983). These elements closely align with the four necessary elements of collateral estoppel under federal law. To invoke collateral estoppel under the federal principles, the party seeking collateral estoppel must establish the following necessary elements have been satisfied:

> (1) The issue at stake must be identical to the one involved in the prior litigation;
> (2) the issue must have been actually litigated in the prior suit;
> (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and
> (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (quoting *I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986)). Although incorrect, the parties' reliance on those principles is reasonable "because Alabama law on the doctrines of *res judicata* and collateral estoppel is substantively the same as federal law." *McCulley v. Bank of Am., N.A.*, 605 F. App'x 875, 878 (11th Cir. 2015). If anything, it appears that Wheeler has subjected itself to a more stringent standard since the federal principles require the additional element of establishing that the non-moving party had a full and fair opportunity to litigate. Because the parties have addressed the four elements under the federal principles and because those elements overlap with the applicable Alabama principles, the Court will address the fourth federal element as raised by the parties. Since Wheeler seeks to use collateral estoppel in an offensive manner, addressing whether Defendants had a full and fair opportunity to litigate in the prior proceeding will address any due process concerns and provide a more comprehensive analysis.[5]

### i. The Issue of Actual Fraud by Defendants Was Identical in Both the Prior District Court Litigation and These Proceedings.

Section 523(a)(2)(A) renders nondischargeable "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. §523(a)(2)(a). Section 8-9A-4, of the

---

[5] In cases, such as here, where a party is using offensive collateral estoppel, a court must take special care to ensure that the defendant had a full and fair opportunity to litigate the issues in the prior proceedings. *Matter of McWhorter*, 887 F.2d at 1567 (11th Cir. 1989); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645, 651, 58 L. Ed. 2d 552 (1979) (addressing concerns about the use of offensive collateral estoppel and concluding that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied.").

AUFTA provides that "[a] transfer made by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer with *actual intent* to hinder, delay, or defraud any creditor of the debtor." ALA. CODE § 8-9A-4(a) (1975) (emphasis added). Thus, like § 523(a)(2)(A) of the Bankruptcy Code, § 8-9A-4(a) of the AUFTA, under which Wheeler sought judgment in the District Court, necessitated a finding of actual fraud.

While traditional elements of common law fraud have been found to apply to § 523(a)(2)(A), the Supreme Court in *Husky* recognized that claims for actual fraud under § 523(a)(2)(A) can also encompass forms of fraud, like fraudulent conveyance schemes. *Husky Int'l Elecs., Inc.,* 136 S. Ct. at 1586. In *Husky*, the Chapter 7 debtor served as a director and shareholder of Chrysalis Manufacturing Corp., an entity that had incurred a debt to Husky. The debtor in *Husky* initiated a series of fraudulent transfers from Chrysalis to other entities controlled by the debtor in an attempt to evade repayment of Husky's debts. Subsequent to the debtor's bankruptcy filing, Husky initiated an adversary proceeding requesting to have its debt declared nondischargeable under § 523(a)(2)(A) based on fraudulent transfers made by and to entities that the debtor controlled. The issue before the Supreme Court was whether a fraudulent conveyance scheme could constitute actual fraud under § 523(a)(2). In holding that actual fraud can encompass forms of fraud, like fraudulent conveyance schemes, the Supreme Court noted that recipients of fraudulent transfers meet the "obtained by" requirement of § 523(a)(2)(A) and may be subject to nondischargeability actions for debts traceable to such transfers. Specifically, the Supreme Court stated:

> It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance, will be nondischargeable under § 523(a)(2)(A). Thus,

at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Husky Int'l Elecs., Inc.*, 136 S. Ct. at 1589 (citations omitted).[6]

For there to be an identity of issues such that collateral estoppel applies, there must be some finding by the District Court that Defendants, as the recipients of the transfers determined to be fraudulent, acted with the requisite fraudulent intent when receiving the transfers. That has been satisfied here. The District Court found that not only were the transfers "willfully, intentionally, and maliciously effectuated by the transferor" with the intent to injure, delay, or defraud Wheeler, but also that Defendants, as the transferees, "willfully, intentionally, and maliciously accepted" the transfers with the "actual intent to injure, delay, or defraud Wheeler." (Plaintiff's Exhibit, A-12).

Defendants further argue that because the District Court Litigation was based primarily on § 8-9A-4 of the AUFTA, which provides that certain transfers may be found void or voidable where they are made "by a debtor" with actual intent to hinder, delay, or defraud any creditor of the debtor, there is no identicalness of issues since Defendants were not "debtors" of Wheeler in the District Court Litigation. This argument ignores that the AUFTA does not restrict liability to transferors of fraudulent transfers. Specifically, § 8-9A-

---

[6] Defendants argue that, based on footnote 3 of the Supreme Court's opinion, which discusses and leaves to determination on remand, the unusual factual scenario that Ritz was both transferor and transferee, *Husky* should be limited to cases in which the debtor is both transferor and transferee. Otherwise, Defendants contend, the debt could not be "obtained by" the asset transfer scheme. The Court disagrees with Defendants' reading of footnote 3, as the holding is not limited to that set of facts. Justice Sotomeyer's opinion supports this broader reading because she observed that it is rare that the person who receives the fraudulently conveyed assets would also be a debtor on the verge of bankruptcy.

7 of the AUFTA provides avoidance of the transfer as a remedy available to a creditor upon a finding of actual fraud. ALA. CODE § 8-9A-7 (1975).    That remedy is subject to the limitations of § 8-9A-8(a), which provides that "[a] transfer is not voidable under Section 8-9A-4(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligate who took in good faith." ALA. CODE § 8-9A-8(a) (1975).  Alternatively, under § 8-9A-8(d), a good faith transferee is entitled, to the extent of the value given to the debtor, "(1) a lien on or a right to retain any interest in the asset transferred; or (2) a reduction in the amount of the liability on the judgment." ALA. CODE § 8-9A-8(d) (1975).  In short, "[p]roof of the grantor's intent alone is insufficient to cause the conveyance to be set aside." *J.C. Jacobs Banking Co. v. Campbell*, 406 So.2d 834, 843 (1981) (citing 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 6).  Thus, because a court must look to good faith or fraudulent intent to void a transfer and enter a judgment accordingly, the issue of Defendants' fraudulent intent (by way of lack of good faith and fraudulent intent in accepting the transfers) was both raised and relevant under the AUFTA.    These issues are identical to the issues necessary to determine a debt nondischargeable under § 523(a)(2)(A).

Defendants also argue that the issues are not identical on their face because the District Court Litigation proceeded primarily under § 8-9A-4 of the Alabama Code and the instant nondischargeability proceeding is based on § 523(a)(2)(A) of the Bankruptcy Code. Alabama courts have held that "[t]he doctrine of collateral estoppel, or issue preclusion, does not require identity of the causes of action involved" but merely an identical issue to one litigated in the prior suit.  *Stinnett v. Kennedy*, 232 So. 3d 202, 220 (Ala. 2016) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 726 (Ala. 1990)); *see also In re Bilzerian*, 100

15

F.3d at 888 (11th Cir. 1996) (finding collateral estoppel prevented relitigation of the necessary elements of fraud under § 523(a)(2)(A) after prior fraud judgment against debtor from a Texas district court). Because dischargeability of a debt is not something that arises in non-bankruptcy proceedings, courts look to the foundation of the prior fraud judgment for a commonality with the dischargeability exception. *See In re Itzler*, 247 B.R. 546, 550 (Bankr. S.D. Fla. 2000). The relevant transactions forming the basis for judgment in the prior proceeding must be not only "similar in nature and close in time" but "precisely the same as" the issues raised in the dischargeability proceeding. *Matter of McWhorter*, 887 F.2d at 1567. The transactions and transfers forming the factual basis of the District Court Complaint and the Complaint in these proceedings are not merely similar in nature and close in time, but identical. As such, this first element of collateral estoppel has been satisfied as to the District Court Judgment against Defendants.

> **ii. The Issue of Actual Fraud as to Defendants was Actually Litigated in the Prior District Court Litigation and Defendants Had a Full and Fair Opportunity to Litigate.**

### 1. Actually Litigated

It is Wheeler's burden to establish that the issues raised in these nondischargeability proceedings were actually litigated in the prior District Court Litigation. *Petersen v. Woodland Homes of Huntsville, Inc.*, 959 So. 2d 135, 139 (Ala. Civ. App. 2006) ("The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication."); *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So.2d 507, 520 (Ala. 2002).[7] While collateral estoppel requires that the relevant issues

---

[7] In his brief, Laslie admits that "it appears that the determination of transfers being fraudulent under state law was litigated regarding the debtors and creditor," but argues that the District

be "actually" or "fully" litigated in the prior action, these principles do not measure the quality or quantity of arguments made during the litigation or at trial. Satisfaction of this element only requires: (i) "that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion"; and (2) "that the losing party had 'a fair opportunity procedurally, substantively and evidentially' to contest the issue." *In re Bush*, 62 F.3d at 1323 (citing *Overseas Motors, Inc. v. Import Motors*, 375 F.Supp. 499, 516 (E.D. Mich. 1974), *aff'd* 519 F.2d 119 (6th Cir.)). The requirement of actual litigation "may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *In re Bush*, 62 F.3d at 1324 (citing *In re Daily*, 47 F.3d 365, 368-69 (9th Cir. 1995)).

Defendants argue that the District Court Judgment was effectively a judgment by default and collateral estoppel should not apply.[8] Defendants contend that as a result of ineffective assistance of counsel and/or the Sanctions Orders, the issues were not actually litigated.[9] Defendants do not dispute that even though they had sufficient notice of the trial

---

Court's determination to that effect is not "equivalent to a determination of dischargeability under the Bankruptcy Code regarding actual fraud." (Laslie Brief, Doc. 44). That the matter was litigated under state law (the only law on which Wheeler based its District Court Complaint) is all that is necessary to satisfy the "actually litigated" element. Dischargeability of the debts owed to Wheeler was not a matter to be litigated in the District Court.

[8] Although, as mentioned above, Laslie admitted that the fraudulent transfer issue under the AUFTA was indeed "actually litigated," this Court will still address the arguments to the contrary as being raised by both Defendants.

[9] Debtor, Ann, admits in argument:

"[A]lthough she may have been barred from presenting evidence in defense of alleged fraudulent transfers, *she was not prevented from presenting evidence of*

17

date, they failed to attend. Instead, they contend that their absence was at the suggestion of their counsel; yet, this is not corroborated by the trial transcript provided to this Court by both Defendants and Wheeler. Defendants argue that because they did not attend trial and because their attorney failed to present evidence or cross-examine witnesses, the judgment that entered was a de facto default.[10] The Court is not persuaded.

The District Court Litigation was not a typical "default judgment" situation which could prevent the application of collateral estoppel. Judge Byron in the prior proceeding specifically iterated his concerns about the inapplicability of a default judgment based on the extensive participation and defenses by Defendants prior to the trial. The lawsuit by Wheeler was brought against Defendants in December 2014, Defendants retained counsel to defend them, Defendants answered the Complaint in March the following year, and Defendants actively participated in the adversary process for more than two years. The record provided from the District Court Litigation shows Defendants' extensive participation (or intentional lack of participation) in discovery matters preceding trial. Although the Sanctions Orders limited the admission of certain evidence, based on Defendants' failure to comply and cooperate with discovery requests, the Sanctions Orders did not prohibit the introduction of

_____

the issue of actual fraud, or moreover, willful or malicious conduct. However, due to her understanding from her defense counsel . . . she did not appear at trial and essentially suffered a default judgment."

(Ann Response, Doc. 60) (emphasis added). Laslie makes a similar admission in his response stating that he was one of the defendants "not barred from introducing any evidence of consideration or the reason given for any transfers received by them" and "this should not have prevented him . . . from cross examining witnesses about the allegations of fraudulent transfers." (Laslie Response, Doc. 44).

[10] Defendants' arguments on this point are more akin to an "ineffective assistance of counsel" claim rather than a defense that the matter was not actually litigated. These nondischargeability proceedings are not the avenue for those assertions.

all evidence or argument by the defense.[11]  Specifically, the Sanctions Orders did not prevent Defendants from introducing evidence on the issue of whether Defendants acted with fraudulent intent.  Those issues were raised by Wheeler, supported with evidence at trial, and counsel for Defendants did not object or offer any evidence to the contrary.

A decision to not defend is not viewed in the same light as an unknowing or unintentional failure to defend.  This Court agrees with other courts that have found "[i]t would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance.'" *In re Bush*, 62 F.3d at 1324 (quoting *In re Wilson,* 72 B.R. at 959).  The trial transcript reveals that Defendants requested that their attorney not defend despite him having advised them of the potential consequences of not defending.[12]  Defendants were made aware of the conclusive effect of their decision to not attend the trial, they chose not to appear, and trial proceeded with counsel present.  As such, the actually litigated element of collateral estoppel has been satisfied.

## 2.  Full and Fair Opportunity

Notice and opportunity to participate, attend, and present is the foundation of due process and the "full and fair opportunity to litigate" element.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

---

[11] Defendants argue that the Sanctions Orders were improper and unnecessarily prohibited certain evidence and supplied Affidavits in an effort to support that they complied with discovery. A bankruptcy dischargeability proceeding is not the correct venue to contest a contempt order from a prior court.

[12]  Counsel's motion to withdraw was denied, after the District Court Judge voiced concerns about the inapplicability of default judgment to the case.

interested parties of the pendency of the action and afford them an opportunity to present their objections."); *see also Matter of Ngwangu*, 529 B.R. 358, 363 (Bankr. N.D. Ga. 2015) (finding defendant did not have a full and fair opportunity to litigate because of inconsistent hearing notices that deprived defendant of her opportunity to present objections.). While special care is needed to ensure that Defendants had a full and fair opportunity to litigate in the prior proceeding as set forth in *Matter of McWhorter*, 887 F.2d at 1567 (11th Cir. 1989), this does not translate to deference to Defendants due to the penalty of being denied a discharge of a debt in their bankruptcy cases. *See Thacker v. SE Prop. Holdings, LLC*, 2016 WL 6039204, at \*9 (N.D. Fla. Mar. 21, 2016), *aff'd sub nom. In re Thacker*, 678 F. App'x 815 (11th Cir. 2017) ("*McWhorter* does not require any deferential treatment be given to a debtor; the issue [of a debtor's full and fair opportunity to litigate the issues in the other proceedings] must only be considered by the court.").

Here, the District Court Complaint alleged actual fraud by Defendants. Even though these allegations were made clear to Defendants well in advance of trial, they did not defend against these allegations despite ample opportunity. Defendants have not raised lack of notice at any point and the facts do not support such a finding. Nothing in the record suggests that Defendants' due process rights were impaired. That Defendants participated in the District Court Litigation for years, were aware of the trial date, did not appear, and requested that their counsel not appear on their behalf does not establish that they were denied an opportunity to litigate. Thus, this Court finds that Defendants had a full and fair opportunity to litigate in the prior proceeding.

### iii. A Determination of Actual Fraud by Defendants in the Prior Litigation Was a Critical and Necessary Part of the District Court Judgment.

To avoid ambiguous judgments being given preclusive effect, collateral estoppel requires that the issues in the prior litigation were a critical and necessary part of the prior judgment. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1268 (11th Cir. 2011). The critical and necessary prong of the collateral estoppel test ensures that the prior court actually addressed or decided the issue in the former suit before it can be held as conclusive in subsequent litigation. *In re Barreto*, 514 B.R. 702, 716 (Bankr. S.D. Fla. 2013), *aff'd*, No. 13-81079-CIV, 2014 WL 3928518 (S.D. Fla. Aug. 12, 2014). Courts have used the term "essential" as a further descriptor for critical and necessary. *Id.*

As discussed above, a finding under AUFTA that Defendants did not possess good faith in receiving the fraudulent transfers was critical and necessary to the judgment rendered against them as transferees. Although the Complaint focused on the transfer being voidable pursuant to § 8-9A-4 of the AUFTA, subsequent sections provide exceptions or defenses to liability based on good faith. *See* § 8-9A-8, ALA. CODE (1975); *see also In re Gardner*, No. 07-03672-BGC7, 2012 WL 4510878, at *6 (Bankr. N.D. Ala. Sept. 28, 2012) ("If the property has been transferred to a good faith transferee it is not avoidable pursuant to [ ] § 8–9A–4(a) [and] § 8-9A-8(a)."); *Roberson v. Johnson*, 950 So. 2d 317, 321 (Ala. Civ. App. 2006) ("[T]he AUFTA provides that a creditor may not void a transfer to a transferee who took in good faith and gave 'a reasonably equivalent value' for the transfer."). Absent a finding of fraudulent intent (or lack of good faith), the District Court would not have been able to determine the transfers were voidable under AUFTA. *See* § 8-9A-8(a), ALA. CODE (1975); *In re Gardner*, No. 2012 WL 4510878, at *6. Accordingly, it was essential for the

District Court to evaluate the fraudulent intent of Defendants in determining whether the fraudulent transfers were voidable.

  **iv. Summary Judgment In Wheeler's Favor Is Warranted as to the District Court Judgment Debts.**

  The Court finds that Wheeler has satisfied each of the elements of collateral estoppel as to the District Court Judgment. Because collateral estoppel applies, this Court accepts the findings as set forth in the Decision and the District Court Judgment. In applying those findings of actual fraud to these nondischargeability proceedings, Wheeler has likewise met its burden that summary judgment should be granted in its favor because there exists no genuine issue as to any material fact regarding Defendants' requisite fraudulent intent such that the debts owed by Defendants to Wheeler as a result of the District Court Judgment are nondischargeable under § 523(a)(2)(A) as a matter of law.

  **B. The Doctrine of Collateral Estoppel Does Not Apply to the Sanctions Order and Summary Judgment On That Basis Is Not Warranted**

  In the Motions for Summary Judgment, Wheeler also asked that the award of attorneys' fees and costs from the Sanctions Orders be determined nondischargeable pursuant to §523(a)(2)(A) through the doctrine of collateral estoppel. While the elements required to establish collateral estoppel have been met as to the debts owed by Defendants to Wheeler pursuant to the District Court Judgment, they have not with regards to the debts owed by Defendants to Wheeler under the Sanctions Orders.

  Wheeler contends there was fraudulent behavior in Defendants' willful failure to abide by the District Court's discovery orders; however, that fraud was not the same as the fraud alleged in the District Court Complaint predicated primarily on violations of the AUFTA. The Sanctions Orders stemmed from allegations of noncompliance with discovery,

which required the District Court to weigh degrees of culpability against the prejudice to the opposing parties, not find fraudulent intent. There were no clear findings in the Sanctions Orders relating to actual fraud or a fraudulent conveyance scheme by Defendants. Absent such findings, Wheeler has not satisfied the requirements under § 523(a)(2)(A). Wheeler provided no additional evidence or arguments outside of the Sanctions Orders to support their position that the contempt fees should be nondischargeable as a matter of law pursuant to § 523(a)(2)(A). As such, this Court has no basis to summarily grant judgment in Wheeler's favor as to the attorneys' fees owed under the Sanctions Order, and judgment as a matter of law is not warranted.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's Motions for Summary Judgment in the respective cases are due to be granted in part and denied in part. The debts owed by Defendants to Wheeler as a result of the District Court Judgment are nondischargeable pursuant to § 523(a)(2)(A). The issue of whether the debts by Defendants owed to Wheeler as a result of the Sanctions Orders are dischargeable remains an issue for trial. Separate orders will enter accordingly.

Done this 24th day of January, 2020.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor/Plaintiff
Leonard N. Math, Attorney for Plaintiff
Collier H. Espy, Attorney for Defendant, Lavenia Ann Jones
Susan Walker, Attorney for Defendant, Robert Laslie Jones, III